## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK J. ROTH and DEBRA A. ROTH, | : | |
| | : | |
| | : | Civil No. 3:12-CV-00898 |
| **Plaintiffs** | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CABOT OIL & GAS CORPORATION and GASSEARCH DRILLING SERVICES CORPORATION, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

## I.      INTRODUCTION

The Plaintiffs in this action, Frederick J. Roth and Debra A. Roth (collectively,

"Plaintiffs"), have sued Cabot Oil & Gas Corporation and GasSearch Drilling

Services Corporation (collectively, "Defendants"), alleging that Defendants' oil and

gas drilling operations in Springville Township and Dimock Township in

Susquehanna County, Pennsylvania have damaged the Plaintiffs' property in a variety

of ways.  Plaintiffs originally commenced this action in the Court of Common Pleas

of Susquehanna County on March 19, 2012.  (Doc. 1.)  On May 14, 2012, Defendants

removed the action to this Court pursuant to this Court's diversity jurisdiction.  (Id.)

In their amended complaint, filed on August 6, 2012, Plaintiffs have alleged nine separate causes of action, including: (i) violation of the Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. Ann. § 602.101 et seq.; (ii) negligence; (iii) negligence per se; (iv) private nuisance; (v) strict liability; (vi) trespass; (vii) inconvenience and discomfort; (viii) breach of contract; and (ix) fraudulent misrepresentation and/or inducement.[1]  (Doc. 42.)  Generally speaking, Plaintiffs contend that Defendants negligently conducted hydraulic fracturing and associated natural gas production activities, which resulted in the release of methane gas and other chemicals onto Plaintiffs' property and into Plaintiffs' groundwater.  Plaintiffs maintain that their property has been, and continues to be, contaminated.  Plaintiffs further allege that their peaceful enjoyment of their property has been compromised, and the value of their property and residence has diminished as a result of Defendants' oil and gas activities.  (Id.)

Prior to the District Court's entry of a case management order in this case, Defendants moved for the entry of a so-called "Lone Pine" case management order, in order to compel Plaintiffs to present a *prima facie* evidentiary showing in support

---

[1] Plaintiffs had previously alleged claims for personal injury and medical monitoring, but they have recently abandoned these claims in the amended complaint, which includes only claims alleging injury to the Plaintiffs' property. (Doc. 42.)

of their claims before traditional discovery practice would commence. (Doc. 33.) The District Court subsequently referred this motion to the undersigned for resolution. (Doc. 48.) The motion is fully briefed and is ripe for disposition. (Docs. 34, 38, 45, 49.)

In the motion, Defendants argue that the Court should forego traditional discovery and case-management practice in this case in favor of requiring Plaintiffs initially to make a *prima facie* evidential showing of exposure, injury, and causation in support of their claims. Defendants maintain that Plaintiffs should be required to produce this information before the parties engage in full-blown discovery, which Defendants worry will be expensive and time consuming – and a process that they hope may be avoided entirely given their "serious doubts regarding Plaintiffs' ability to make even a *prima facie* showing of exposure, injury, and causation." (Doc. 34, at 3.) Defendants insist that Plaintiffs will not be prejudiced by the imposition of this requirement, and suggest by making a "comprehensive initial disclosure . . . of over 5,800 documents" they have afforded Plaintiffs' experts all the information they need to establish a *prima facie* showing of exposure, injury, and causation – if possible – in this case. (Id., at 4.)

Plaintiffs take a decidedly different view of the motion, and oppose it as an extraordinary and improper attempt by Defendants to seek summary judgment at the

outset of the case, and to impose upon Plaintiff the unfair initial burden of proving the legitimacy of their claims before the parties have engaged in any meaningful discovery. Plaintiffs observe that this case involves straightforward property damage claims, brought by two married plaintiffs against two defendants, and Plaintiffs thus argue that the familiar nature of the claims, and the limited number of parties to the litigation make this case unsuited to a Lone Pine order, which are typically reserved for complex mass- and toxic-tort claims.

Upon consideration, we agree with Plaintiffs that this case does not warrant the imposition of a <u>Lone Pine</u> order. Instead, we believe that the case should be placed on a standard case management order in accordance with Rule 16 of the Federal Rules of Civil Procedure, and in line with the order the District Court has already entered in this case. (Doc. 40.) In reaching this conclusion, we find that the nature of the claims in this case do not compel the derogation of the Federal Rules of Civil Procedure in favor of imposing an extraordinary case management procedure that would force Plaintiffs to establish a *prima facie* case before Defendants may be obligated to respond to discovery or otherwise respond to this litigation. Although we acknowledge that some courts have, in certain mass- and toxic tort cases, imposed <u>Lone Pine</u> orders along the lines of that proposed in this case, we find the claims in this case, and the relatively early procedural posture of this litigation, do not warrant

the entry of such an unusual and burdensome order at this stage of the proceedings. Moreover, we are confident that the Court is equipped with the discretion, flexibility, and broad authority to ensure that the discovery and litigation burdens do not become excessive or unreasonable, including the power to limit or stage discovery, and to carefully oversee the pretrial litigation of this action in order to respond to disputes as they may arise.

## II.   <u>BACKGROUND</u>

Plaintiffs claim that Defendants have engaged in environmental contamination and pollution through releases, spills, and discharges of combustible gases, hazardous chemicals, and industrial wastes as a result of gas drilling and exploration activities conducted near Plaintiffs' home and property at a number of different wells proximate to Plaintiff's property. It appears that in 2008, Plaintiffs entered into an oil and gas lease with Cabot Oil & Gas. Plaintiffs claim that in the course of agreeing to this lease, Cabot represented that (i) the company would test Plaintiffs' pond and domestic water supplies prior to and after the commencement of drilling operations; (ii) Cabot would disclose the results of the water tests to Plaintiffs; (iii) Plaintiffs' land would remain essentially preserved and undisturbed; (iv) Plaintiff's quality of life and use and enjoyment of their property would not be compromised by Defendants' drilling operations; (v) if Cabot's operations affected Plaintiffs' property or water supply,

Cabot would remediate the condition; and (vi) Cabot would remain in compliance with state and federal laws and regulations governing safe oil and gas drilling practices near Plaintiffs' property.  (Doc. 42, Am. Compl., ¶¶ 18(a) - (f).)

Plaintiffs allege that despite these representations, Defendants' hydraulic fracturing activities released methane gas into Plaintiffs' drinking water in or around August 2010, which has prevented Plaintiffs from accessing drinking water on their property.  (Id., ¶¶ 30-32.)

Plaintiffs also allege that in or around April 2012, the Pennsylvania Department of Environmental Protection ("DEP") observed that Defendants had caused or permitted holes to exist in waste pit liners at one of the well sites, which were not timely repaired.  Moreover, Plaintiffs claim that during the course of making the repairs that DEP required, Defendants caused hazardous flowback and wastewater to enter Plaintiffs' groundwater supply, causing further pollution of Plaintiffs' property. (Id., ¶¶ 34-40.)

Plaintiffs also allege that the DEP cited Defendants with certain violations for failing to properly case and cement one of the wells, after it had been observed that the poor cementing job at the well had permitted bubbling gas near the surface of the gas well.  (Id.)  Even before these alleged violations and torts, Plaintiffs claim that in the summer of 2011, DEP had cited Defendants with failing to properly construct

waste pits and wells near Plaintiffs' property, and after the drilling of these wells, DEP sampled Plaintiffs' ground water and found that the levels of dissolved methane in Plaintiffs' water rendered water unsafe for human consumption. (Id., ¶¶ 46-49.)

Plaintiffs claim that as a result of these various claimed violations, Plaintiffs' groundwater has been and continues to be contaminated; Plaintiffs have suffered loss of value to the property and their quality of life has been compromised; Plaintiffs require continued water monitoring and must obtain water from outside sources; Plaintiffs' appliances that rely upon the use of groundwater have been impaired; and Plaintiffs require a permanent source of potable water, including a treatment and purification system for their home. (Id., ¶ 51(a)-(k).)

For their part, Defendants' characterize Plaintiffs' claims as woefully inadequate in terms of their factual allegations, and have accordingly moved to dismiss them pursuant to Rule 12(b)(6). (Doc. 50.)[2] Furthermore, as directly relates to the pending Lone Pine motion, Defendants argue that even though the instant litigation was only filed in March 2012, and removed to this Court in May 2012, the case is directly related to other toxic tort litigation that has been pending in the Middle District of Pennsylvania since 2009. See Norma Fiorentino, et al., v. Cabot

---

[2] The motion to dismiss has not been referred to this Court, and we refer to it only because it represents Defendants' most fully articulated assessment of the merits of Plaintiffs' claims in this case.

Oil & Gas, et al., Civil No. 3:09-CV-2284 (JEJ). Accordingly, Defendants argue that Plaintiffs – who are represented by the same counsel that represents the plaintiffs in the Fiorentino litigation – have had more than enough time to develop or become aware of evidence to support their broad allegations of tortious conduct and resulting injury. Defendants insist that Plaintiffs have no evidence to support their factual allegations, despite being represented by the same lawyers who have been litigating substantially related matters since 2009. Because of this alleged lack of evidence, Defendants argue that the Court should enter a Lone Pine order at the outset of this litigation to require Plaintiffs to demonstrate the evidential basis for their claims before permitting the parties to engage in traditional discovery in this case.

## III.    DISCUSSION

Lone Pine case management orders derive from a 1986 decision of the New Jersey Superior Court in Lore v. Lone Pine Corp., 1986 WL 637507 (N.J. Superior Ct. Nov. 18, 1986). In Lone Pine, the New Jersey court entered a pretrial order that required the plaintiffs to provide facts in support of their claims through expert reports, or risk having their case dismissed. Id., 1986 WL 637507, at *1-*3. As one federal court of appeals has noted, "Lone Pine orders are designed to handle the complex issues and potential burdens of defendants and the court in mass tort litigation." Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000).

Review of relevant case law thus indicates that <u>Lone Pine</u> orders appear to be utilized most often in cases involving complicated legal and factual issues in complex mass tort and toxic-tort litigation involving multiple parties, where the discovery process would be particularly burdensome, and where the plaintiff's ability to sustain their burden of proof was found to be questionable. <u>See, e.g.</u>, <u>Avila v. Willits Environmental Remediation Trust</u>, 633 F.3d 828 (9th Cir. 2011) (affirming dismissal of plaintiffs' claims in complex environmental litigation where, five years after the litigation commenced, the plaintiffs failed to comply with the district court's order to make a *prima facie* showing of exposure and causation); <u>Acuna</u>, 200 F.3d at 340 (action involved approximately 1,600 plaintiffs suing over 100 defendants for injuries alleged to have occurred over four decades); <u>In re Avandia Marketing, Sales Practices and Prods. Liability Litig.</u>, 2010 WL 4720335, *1 n.1 (E.D. Pa. Nov. 15, 2010) (citations omitted); <u>Abbatiello v. Monsanto Co.</u>, 569 F. Supp. 2d 351, 353 n. 3 (S.D.N.Y.2008) (toxic tort action involving multiple parties); <u>In re Vioxx Prod. Liab. Litig.</u>, 557 F. Supp. 2d 741, 743 (E.D. La.2008); <u>Burns v. Universal Crop Protection Alliance</u>, 2007 WL 2811533 (E.D. Ark. Sept. 25, 2007) (action brought by 82 cotton farmers against five herbicide manufacturers under theories of strict liability, negligence, breach of warranty, and violation of state law, alleging that defendants' products damaged plaintiffs' cotton crops); <u>Morgan v. Ford Motor Co.</u>, 2007 WL

1456154, at *1, *7 (D.N.J. May 17, 2007) (toxic tort action involving more than 700 plaintiffs and multiple defendants); Baker v. Chevron USA, Inc., 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007) (360 plaintiffs alleging injury from defendant's operation of a gasoline refinery); In re Rezulin Prods. Liability Litig., 441 F. Supp. 2d 567 (S.D.N.Y. 2006) (28 plaintiffs suing manufacturer of prescription diabetes medication, in an action related to thousands of lawsuits for alleged liver damage allegedly caused by the medication); In re Silica Prods. Liability Litig., 398 F. Supp. 2d 563 (S.D. Tex. 2005) (multi-district litigation involving approximately 10,000 plaintiffs alleging injury from silica exposure caused by more than 250 defendants); In re 1994 Exxon Chemical Plant Fire, 2005 WL 6252312 (M.D. La. Apr. 7, 2005) (consolidated multi-state toxic tort suits); Renaud v. Martin Marietta Corp., 749 F. Supp. 1545 (action involving over 30 plaintiffs suing a missile manufacturer for water pollution).[3]

---

[3] Although Lone Pine orders are most typically entered in large, complex toxic tort actions, we recognize that courts have, where appropriate, also entered them in more discrete cases involving fewer parties. See, e.g., Strudley v. Antero Res. Corp., No. 2011-cv-2218 (Col. Dist. Ct. Denver Cty. May 9, 2012) (Lone Pine order issued where plaintiff family alleged health injuries from exposure to natural gas operations); Pinares v. United Techs. Corp., No. 10-80883, 2011 WL 240512, at *1-2 (S.D. Fla. Jan. 19, 2011) (Lone Pine order entered in case brought by two plaintiffs alleging health injuries from toxic wastes allegedly from the defendant's manufacturing process; case was related to a companion putatitve class action involving the same counsel); Schelske v. Creative Nail Design, Inc., 933 P.2d 799, 803 (Mont. 1997) (order issued in case brought by two plaintiffs

Although no federal rule expressly authorizes the use of <u>Lone Pine</u> orders, federal courts have interpreted Rule 16 of the Federal Rules of Civil Procedure as supplying the authority to enter <u>Lone Pine</u> orders in complex litigation, pursuant to district courts' broad discretion to administer the civil actions over which they preside.  <u>See</u> <u>McManaway v. KBR, Inc.</u>, 265 F.R.D. 384, 385 (S.D. Ind. 2009) ("<u>Lone Pine</u> orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . .' Fed. R. Civ. P. 16(c)(2)(L)."); <u>see also</u> <u>Ramos v. Playtex Prod., Inc.</u>, 2008 WL 4066250, at *5 (N.D.Ill. Aug. 27, 2008) (same, denying motion for <u>Lone Pine</u> order); <u>Morgan</u>, 2007 WL 1456154, at *5-6 (D.N.J. May 17, 2007) (noting, among other provisions, several potentially applicable provisions of Rule 16); 35B C.J.S. Federal Civil Procedure § 911 (2009) ("So-called '<u>Lone Pine</u> orders' are ... issued under the wide discretion afforded district judges over

---

alleging health injuries from toxic substances allegedly from cosmetic manufacturing).  Notwithstanding these examples, it appears that <u>Lone Pine</u> orders are most typically entered in civil actions involving multiple parties, and often involving complex toxic tort allegations, where discovery would likely be particularly challenging, protracted, and expensive.

the management of discovery."); 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1525 (2d ed.1990).

In evaluating requests for <u>Lone Pine</u> or modified case management orders, courts have found that a number of factors may be relevant, including (1) the posture of the litigation; (2) the case management needs presented, (3) external agency decisions that may bear on the case; (4) the availability of other procedures that have been specifically provided for by rule or statute; and (5) the type of injury alleged and its cause. <u>See</u> <u>In re Digitek Prod. Liability Litig.</u>, 264 F.R.D. 249, 256 (S.D. W. Va. 2010) (considering these factors, and denying motion for <u>Lone Pine</u> order in multi-district litigation brought by thousands of plaintiffs across the United States against defendants who were involved in the manufacture and distribution of heart medication). In addition, case complexity and pleading defects are additional factors worth considering in advance of entering a <u>Lone Pine</u> order. <u>Id.</u> One court has suggested that <u>Lone Pine</u> orders are used "routinely" in mass tort cases, <u>In re Vioxx</u>, 557 F. Supp. 2d at 743, but regardless of whether this is true, the same court observed that where a court finds a <u>Lone Pine</u> order warranted, the "court should strive to strike a balance between efficiency and equity." <u>Id.</u>

The court in <u>Digitek</u> also observed that courts have begun expressing concern about "the untethered use of the <u>Lone Pine</u> process." <u>Id.</u> In this regard,

A significant criticism of the *Lone Pine* order is that "it gives courts the means to ignore existing procedural rules and safeguards." Simeone v. Girard City Bd. of Educ., 171 Ohio App.3d 633, 872 N.E.2d 344, 350 (Ohio Ct. App.2007). The Court of Appeals of Ohio went on to warn that "[w]hen the *Lone Pine* order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many *Lone Pine* orders are inconsistently applied, which further confuses their purpose."

McManaway, 265 F.R.D. at 386, 2009 WL 4061581, at *2 (observing that Lone Pine orders can be useful devices but cautioning that they are not a "substitute for ... a motion for summary judgment."); Simeone, 171 Ohio App.3d at 643, 872 N.E.2d at 352 ("The timeline of this case is of concern because it is apparent that appellants were not given the full range and benefit of discovery before the *Lone Pine* order was issued. In most of the Lone Pine cases we have reviewed in coming to this conclusion, the Lone Pine order was issued only after one party was refusing to comply with discovery requests or when the plaintiffs failed to set forth a prima facie claim. These circumstances are not present in this case.").

In considering the foregoing factors and concerns, one district court presiding over complex products liability litigation involving a nationwide group of plaintiffs and multiple defendants denied a motion for a Lone Pine order. In re Digitek Product Liability Litig., 264 F.R.D. 249 (S.D. W.Va. 2010). In so doing, the court elected to

rely upon the procedural tools expressly provided for under the Federal Rules of Civil Procedure rather than to rely upon the court's own inherent case management authority to fashion a case management order that required the plaintiffs to produce evidence and expert reports in support of their claims as a precondition to taking discovery. Id. at 259 ("I believe it more prudent to yield to the consistency and safeguards of the mandated rules [providing for dispositive motions and sanctions] especially at this stage of this litigation. Claims of efficiency, elimination of frivolous claims and fairness are effectively being addressed using the existing and standard means.").

Even though the instant lawsuit has only been in the Middle District of Pennsylvania since May 2012, and despite the fact that the District Court had entered a case management order in July 2012 – after the Lone Pine motion was filed – Defendants nevertheless argue that Plaintiffs should be required at the outset to come forward with sufficient evidence to make a *prima facie* showing in support of each of their nine claims in this case. Defendants seems to base this argument primarily on the fact that Plaintiffs' counsel has been engaged in a related lawsuit for more than two years, and has in fact been representing Plaintiffs since 2011, prior to bringing this lawsuit. Defendants argue that counsel's longstanding involvement in related litigation, negotiations with Defendants' counsel even before this litigation was filed,

and the content of Defendants' voluminous initial disclosures should be sufficient to give Plaintiffs the information they would need to establish a *prima facie* case, if they are in fact able to do so. Defendants express great skepticism that Plaintiffs can, in fact, make such a showing, and argue that if Plaintiffs cannot make this showing, the parties should not be put to expensive and time-consuming discovery in support of claims that Defendants believe are inadequately pleaded in the first place.

For their part, Plaintiffs argue that this case is not well-suited for a <u>Lone Pine</u> case-management order. Plaintiffs contend that where they have been issued, <u>Lone Pine</u> orders have been focused on toxic tort cases involving personal injury and medical causation; since there are no medical claims stated in the amended complaint, Plaintiffs suggest that a <u>Lone Pine</u> order is no longer appropriate based upon the subject matter of the litigation alone. Furthermore, Plaintiffs argue that the claims pleaded in this case relate to gas and oil drilling activities located less than 1,000 feet from Plaintiffs' property and groundwater supply, and the DEP has actually documented defects in the gas wells and instances of contamination releases or spills, which are incorporated as part of the amended complaint. Plaintiffs suggest that this evidence alone supports Plaintiffs' *prima facie* case that Defendants' operations have contaminated Plaintiffs' groundwater. Finally, Plaintiffs contend that the claims in this case are straightforward and familiar property-related tort claims, which are

neither doubtful or implausible. Plaintiffs thus maintain that the claims stated in the amended complaint are easily distinguishable from claims of medical injury in mass tort litigation that may be predicated upon questionable and unsubstantiated claims of causation, which are more typically subjected to Lone Pine case-management orders.

Upon careful consideration of this issue, mindful of Defendants' arguments regarding the ability of Plaintiffs ability to prove their claims in this case, particularly given their counsel's involvement in similar litigation as well as this lawsuit, and recognizing Defendants' belief that their own initial disclosures either disprove or fail to lend any support to Plaintiffs' claims, we will nevertheless deny Defendants' motion insofar as it seeks entry of an order that places an exclusive burden on Plaintiff to comply with a set of discovery benchmarks at the outset of the litigation.

At this time, like the Court in Digitek we find it preferable "to yield to the consistency and safeguards of the mandate rules [of civil procedure]," 264 F.R.D. at 259, as well as the Court's own flexibility and discretion to address discovery disputes as they arise, as opposed to entering the rigid and exacting Lone Pine order that Defendants have proposed, at an early point in this lawsuit. The Court is mindful of Defendants' expressed concerns regarding the anticipated expense and burden that will be incurred if this litigation is permitted to proceed along a

traditional pretrial schedule. The Court is prepared to address discovery disputes as they arise in accordance with the Federal Rules of Civil Procedure, and we further anticipate that dispositive motions may be warranted in the event Plaintiffs fail to develop evidence to support their claims.[4] However, despite Defendants' contentions that Plaintiff's claims are either inadequately pled or will ultimately fail on their merits, at this very early stage of this litigation we find ourselves in agreement with the Digitek court, which observed that:

> Resorting to and crafting a Lone Pine order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation. We have not reached that point.

264 F.R.D. at 259.

## IV.  **ORDER**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion for entry of a Lone Pine order (Doc. 33.) is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: October 15, 2012

---

[4] Indeed, Defendants have filed an initial dispositive motion in this case, seeking the dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion is not before the undersigned, and is not yet fully briefed.